IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 6, 2024

## STATE OF TENNESSEE v. DANIEL MCCAIG

**Appeal from the Circuit Court for Dyer County**
**No. 21-CR-114      Mark L. Hayes, Judge**
_____

## No. W2023-01300-CCA-R3-CD
_____

A Dyer County jury found the Defendant, Daniel McCaig, guilty of unlawfully possessing methamphetamine and a firearm. The trial court imposed a total effective sentence of twenty-six years to be served in the Tennessee Department of Correction. On appeal, the Defendant asserts that the evidence is legally insufficient to support his convictions. He also argues that the trial court erred by denying his right to represent himself and imposing consecutive sentences. Upon our review, we respectfully disagree and affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and ROBERT W. WEDEMEYER, J., joined.

Mitchell A. Raines, Assistant Public Defender - Appellate Division, Tennessee Public Defenders Conference (on appeal); Sean Patrick Day, District Public Defender; and Martin L. Howie and Joseline Pugh, Assistant District Public Defenders (at trial), for the appellant, Daniel McCaig.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; and Danny H. Goodman, Jr., District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

On February 21, 2021, Officer Zackory Putman was dispatched to a Kroger parking lot to investigate a report of a possible domestic assault, and Officer Brandon Haynes and his K-9 were sent as backup. Upon arrival, the officers encountered the Defendant and Hannah Boatwright standing near a black Honda Civic. The Defendant and Ms. Boatwright assured the officers that they had been "just playing around" and that no domestic assault had occurred.

Officer Putman smelled the odor of marijuana coming from the Civic. The officer searched Ms. Boatwright's handbag and discovered suboxone and methamphetamine. During a consensual search of the Defendant, Officer Haynes found the keys to the Civic, a pipe for smoking methamphetamine, approximately $2,000 cash in small denominations, and a handgun near the Defendant's right ankle. The Defendant acknowledged that he was unemployed but explained that the money came from a government stimulus check. Both he and Ms. Boatwright asserted that the handgun belonged to her.

The officers took the Defendant into custody and placed him in a patrol vehicle. Officer Haynes confirmed that the keys he obtained from the Defendant fit the Civic. Officer Haynes performed a canine sweep of the outside of the vehicle, and the dog alerted to the front passenger's door. At that point, Officer Haynes searched the vehicle.

In the front passenger area, Officer Haynes found a speed loader with extra ammunition and a holster, all of which matched the handgun found on the Defendant's leg. The officer found a large amount of methamphetamine, three sets of digital scales, jewelry, a spoon that looked like it had been used to heat narcotics, a torch lighter, and a notebook with a list of names and amounts owed. After the officers discovered the methamphetamine, the Defendant admitted that the drugs were his, saying to Officer Putman, "I own up to the drugs. The drugs are mine."

On June 14, 2021, a Dyer County grand jury charged the Defendant with possessing .5 grams or more of methamphetamine with the intent to sell or deliver, unlawful possession of a firearm during the commission of a dangerous felony, and unlawful possession of a weapon by a person having a felony drug conviction.[1] The parties

---

[1] The Defendant was also charged with possessing one-half ounce or more of marijuana with the intent to sell or deliver. This charge was dismissed before trial and is not part of this appeal.

proceeded to trial in May 2022. After the jury was selected, the Defendant discussed with the court whether he had received all of the pretrial discovery related to laboratory analysis and forensic testing. He also questioned the court about his right to represent himself. The trial court said that it would not permit the Defendant to represent himself "at this time," and it proceeded to trial. However, after inadmissible evidence was inadvertently introduced, the trial court declared a mistrial with the parties' consent.

At a second trial conducted eight months later in February 2023, Officers Putman and Hayes testified to the facts recited above. Additionally, Officer Hayes testified that a drug user would typically possess less than one-half gram of methamphetamine. He further testified that the amount of methamphetamine found in the car had an approximate street value of $3,000 to $4,500. Special Agent Carter Depew, a forensic scientist with the Tennessee Bureau of Investigation, testified that the substance found in the car weighed 43.79 grams and tested positive for methamphetamine. At the trial's conclusion, the jury found the Defendant guilty of the charged offenses.

On July 18, 2023, the trial court sentenced the Defendant to an effective term of twenty-six years. More specifically, the court sentenced the Defendant as a Range II, multiple offender to serve fourteen years for the methamphetamine conviction. It also sentenced him as a career offender to serve twelve years for the possession of a firearm during a dangerous felony conviction and as a Range III, persistent offender to ten years for the unlawful possession of a weapon conviction. The court aligned the sentences such that the fourteen-year sentence would be served consecutively to the twelve-year sentence. Finally, the court ordered the effective twenty-six-year sentence to be served consecutively to an eight-year sentence imposed in a previous case.

On August 7, 2023, the Defendant filed a timely motion for a new trial. The trial court denied the motion on September 14, 2023, and the Defendant filed a timely notice of appeal four days later.

## ANALYSIS

In this appeal, the Defendant raises three issues for our consideration. First, he argues that the evidence was legally insufficient to sustain his conviction for possession of methamphetamine and possession of a firearm during the commission of a dangerous felony because the proof did not establish his actual or constructive possession of the drugs. Second, he asserts that the trial court erred by denying him the constitutional right to represent himself. Third, he contends that the trial court abused its discretion by imposing consecutive sentences. We address each of these issues in turn.

3

## A.    LEGAL SUFFICIENCY OF THE EVIDENCE

The Defendant first argues that his convictions for possessing the methamphetamine and the handgun were not supported by legally sufficient evidence. More specifically, he asserts that no evidence established that he had any connection with the car in which the methamphetamine was found. He also contends that because the State failed to prove that he possessed the methamphetamine, it also failed to show that he possessed the handgun during the commission of a dangerous offense. In response, the State argues that the Defendant's possession was established by his statements, his possession of the keys to the car, and other circumstantial evidence. We agree with the State.

### 1.    Standard of Appellate Review

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, "[w]hen making that determination, the prosecution is afforded the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *State v. Thomas*, 687 S.W.3d 223, 249 (Tenn. 2024) (citation and internal quotation marks omitted). To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury, as the trier of fact." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citation and internal quotation marks omitted).

### 2.    Possession of Methamphetamine with the Intent to Sell or Deliver

The Defendant first challenges his conviction for possession of methamphetamine. He contests only the element of possession itself and argues that his conviction is based solely upon his presence and physical proximity to the drugs. We respectfully disagree that the evidence is legally insufficient to support his conviction.

4

Tennessee Code Annotated section 39-17-434(a)(4) (2018) provides, in relevant part, that it is an offense for a defendant to knowingly possess methamphetamine with the intent to deliver or sell. Generally, possession may be established by showing that the defendant had actual or constructive possession of the object. *State v. Hart*, 676 S.W.3d 103, 108 (Tenn. Crim. App. 2023). Our supreme court has acknowledged that "[w]hile actual possession refers to physical control over an item, constructive possession requires only that a defendant have the power and intention . . . to exercise dominion and control over the item allegedly possessed." *State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014) (citation and internal quotation marks omitted). In other words, "constructive possession is the ability to reduce an object to actual possession." *Hart*, 676 S.W.3d at 108 (citations and internal quotation marks omitted).

Our supreme court has cautioned that the mere presence of a criminal accused in the area where an object is discovered or the accused's mere association with a person possessing an object is not alone "sufficient to support a finding of constructive possession." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). However, "[c]onstructive possession depends on the totality of the circumstances in each case. It may be proven by circumstantial evidence." *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013). "Elements of possession for purposes of constructive possession are questions of fact for the jury[.]" *State v. Chatman*, No. M2022-00377-CCA-R3-CD, 2023 WL 5363690, at *11 (Tenn. Crim. App. Aug. 22, 2023) (citation and internal quotation marks omitted) (alteration in original), *no perm. app. filed*.

In this case, the Defendant admitted that the drugs found in the car were his. Both officers testified to hearing the Defendant's admission, and on Officer Putman's body camera video, the Defendant told the officer, "I own up to the drugs. The drugs are mine." From the Defendant's admission that the drugs were his, a rational juror could find that the Defendant possessed the methamphetamine. *See, e.g.*, *State v. White*, No. E2022-00279-CCA-R3-CD, 2022 WL 17413628, at *4 (Tenn. Crim. App. Dec. 5, 2022) (stating that the defendant's admission of ownership could be considered in determining his possession of drugs and a firearm), *no perm. app. filed*; *State v. Campbell*, No. M2020-01045-CCA-R3-CD, 2022 WL 872199, at *8 (Tenn. Crim. App. Mar. 24, 2022) (concluding that the evidence of possession of drugs was sufficient when defendant claimed ownership of a box containing drugs and drug paraphernalia, a box was found in floorboard near where defendant's feet were, and the defendant had a large amount of cash on his person), *perm. app. denied* (Tenn. July 13, 2022); *State v. Hughes*, No. W2022-00571-CCA-R3-CD, 2023 WL 2159249, at *4 (Tenn. Crim. App. Feb. 22, 2023) (considering the defendant's claimed ownership of marijuana, among other factors, in determining possession of the drugs), *perm. app. denied* (Tenn. May 15, 2023).

Citing our decision in *State v. Jones*, No. W2018-01421-CCA-R3-CD, 2020 WL 974197 (Tenn. Crim. App. Feb. 27, 2020), *no perm. app. filed*, the Defendant argues that the proof is insufficient to support his conviction because no evidence tied him to the car in which the methamphetamine was found. He asserts that the vehicle was registered to a third person and that the methamphetamine was found concealed in a bag in the passenger seat of the car.

In *Jones*, this court concluded that the evidence was insufficient to support a defendant's convictions for possession of drugs and a firearm found in a motel room. The defendant and another person shared the room, and no drugs were found on the defendant's person. Neither person acknowledged ownership of the drugs, and nothing was found in the room to indicate the defendant was staying there. *Jones*, 2020 WL 974197, at *10.

For three reasons, the Defendant's case is distinguishable from *Jones*. First, unlike *Jones*, the Defendant asserted ownership of the drugs immediately after they were discovered during a search of the car. As we observed above, this court has repeatedly held that a defendant's admission of ownership is a significant factor in determining possession of contraband.

Second, when officers encountered him, the Defendant was in actual possession of the keys to the car. His possession of the keys is strong circumstantial evidence that he had control over the vehicle and access to the items in the car itself. *See Chatman*, 2023 WL 5363690, at *12 ("The fact that Defendant had a key to enter the apartment as if it were his home established that he had dominion and control of the apartment and not mere presence or association with the named lessee."); *State v. James*, No. M1999-02533-CCA-R3-CD, 2000 WL 1763686, at *3 (Tenn. Crim. App. Nov. 30, 2000) (concluding that a defendant had constructive possession of a pistol found in the defendant's car when the proof established the defendant possessed the keys to his vehicle and "could obtain actual possession of the pistol at any time"), *no perm. app. filed*.

Third, officers found other items in the car that had a circumstantial link to the Defendant. When officers searched the Defendant, they located a .38 caliber pistol tucked into his pants around his ankle. When they later searched the car, they uncovered a speed loader and ammunition matching the Defendant's pistol. These items were both found in the same bag in which the methamphetamine was also located.

Finally, the Defendant had on his person a methamphetamine pipe and a thousand dollars in cash in small denominations. Both of these circumstances constitute circumstantial evidence that the Defendant was in possession of the methamphetamine.

6

*See State v. Campbell*, No. M2020-01045-CCA-R3-CD, 2022 WL 872199, at *8 (Tenn. Crim. App. Mar. 24, 2022), *perm. app. denied* (Tenn. July 13, 2022) ("It is reasonable to infer that the Defendant could have exercised dominion and control over the black bag and the pistol [found in the car at his feet]. The large amount of cash on the Defendant's person also circumstantially established that he constructively or actually possessed the drugs and pistol."); *State v. Singleton*, No. E2006-01809-CCA-R3-CD, 2008 WL 199853, at *3 (Tenn. Crim. App. Jan. 24, 2008) ("Defendant's possession of a pipe used to smoke methamphetamine in his pants pocket and Defendant's testimony that he intended to smoke the methamphetamine at the time the police arrived are also circumstantial evidence of his constructive possession of methamphetamine."), *no perm. app. filed*.

From this proof, a rational juror could find that the Defendant constructively possessed the methamphetamine found in the car. Because the Defendant does not challenge any other essential element of this crime, we conclude that the evidence was sufficient to sustain the Defendant's conviction for possession of methamphetamine with intent to sell or deliver.

### 3. Possession of a Firearm During the Commission of a Dangerous Felony

The Defendant also asserts that because his presence and proximity to the car, and therefore the methamphetamine, was insufficient to establish his constructive possession of the drugs, his conviction for possession of a firearm during the commission of a dangerous felony should also be reversed. The State responds that the evidence was sufficient to sustain the Defendant's conviction. We agree with the State.

Tennessee Code Annotated section 39-17-1324(a) (2018) provides that "[i]t is an offense to possess a firearm . . . with the intent to go armed during the commission of or attempt to commit a dangerous felony." Indeed, "[a] felony involving . . . possession with intent to sell, manufacture or distribute a controlled substance" is a dangerous felony. Tenn. Code Ann. § 39-17-1324(i)(1)(L).

The Defendant does not contest that he was in actual possession of the firearm found on his person. *See State v. Edmondson*, 231 S.W.3d 925, 928 (Tenn. 2007) ("A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it."). Instead, he challenges only whether he possessed the methamphetamine found in the car and thereby committed a dangerous offense. Because we have concluded that the proof was legally sufficient to support his conviction for the underlying offense, we also conclude that a rational juror could have found that the Defendant was guilty of

possessing a firearm with the intent to go armed during the commission of a dangerous felony. The Defendant is not entitled to relief on this ground.

## B.    SELF-REPRESENTATION

The Defendant next argues that the trial court erred when it denied him the constitutional right to represent himself. The State responds that the Defendant is not entitled to relief, in part, because he never made a clear and unequivocal request to represent himself at the second trial. We agree with the State.

### 1.    Background

After the jury was sworn at the Defendant's first trial, and about thirty minutes before the trial started in earnest, the Defendant expressed concerns to the trial court about the adequacy of discovery provided by the State. He specifically questioned whether the State had disclosed its intent to introduce lab reports and other materials into evidence. The trial court reassured the Defendant that his counsel was experienced and competent and would ensure that no undisclosed evidence would be presented. Defense counsel further assured the court that the State had complied with its discovery obligations and that all materials had been provided to the Defendant.

The Defendant subsequently informed the trial court that his family was present outside the courtroom and asked whether they could hire a new attorney before proceeding. Noting that the trial had already begun, the court denied this request. The Defendant then asked the court, "Well, what if I decided to represent myself now?" When the trial court said that self-representation would not be allowed "at this point," the Defendant replied, "As long as I've got a legal aid counsel present, and as long as I'm willing to – I – you know – state the facts of my rights – and being able to[,] how can I go about that, Your Honor?" The court then questioned his understanding of the legal system, and the Defendant acknowledged that he did not possess legal expertise. He also admitted that he had no significant grievances with his counsel but claimed the two were not "on one accord" regarding trial strategy.

Defense counsel disputed this assertion by stating that he had previously met with the Defendant and reviewed the trial strategy in detail, and the Defendant had agreed with the strategy at the time. When the trial court reiterated that it would not permit the Defendant to represent himself "at this time," the Defendant again asked whether he could hire another lawyer with his family. The court also rejected the request and, after a

discussion about whether the Defendant had received all of the lab reports obtained in discovery, noted that it could not "in good conscience let you ruin your chances of a successful defense in this trial because you've got your mind fixated on one issue." The court then recessed for lunch to permit the Defendant and defense counsel to discuss the matter further.

When the trial resumed, the Defendant repeated his concerns about whether he had received discovery and suggested postponing the trial to address these issues. More specifically, the Defendant said:

> I mean, I just want a fair trial, Your Honor, that's all I want. I've been in this system for a while. Your Honor, I mean, the time when a person tries to do right, I can't because I can't – I can't get in front of the Court, period. I mean, I mean, I'd rather represent myself to know that I'm getting a representation, the best I know, is sir, I can't do it with a lawyer who's telling me to shut up every time I try to ask him a question or wanting to know a tactical strategy that's going to best defend me. I know he's good. . . . I'd like to be on one accord with me and my attorney, and it's not, and I'd like to – for the Court to maybe see if we can – maybe try to set this off for another trial date, because I wasn't expecting to come here, and this trial be ending today.

The trial court reiterated that defense counsel had filed a discovery request. The court also explained that pretrial discovery does not include full access to the State's trial strategy or evidence presentation.

During the first trial, inadmissible proof of the Defendant's prior convictions was inadvertently introduced to the jury, and the trial court declared a mistrial with the consent of all the parties. The Defendant did not mention representing himself between the first and second trials. After his conviction at the second trial, the Defendant stated at the sentencing hearing, "I feel like I . . . was violated in a way 'cause I – didn't get a chance to have another lawyer or anew – me to represent myself . . . . I mean, at the second trial I would rather been able to represent myself."

## 2.       Standard of Appellate Review

"[W]hether a defendant has exercised his or her right of self-representation and has concurrently waived his or her right to counsel is a mixed question of law and fact" that this court reviews de novo with a presumption that the trial court's findings of fact are correct. *State v. Hester*, 324 S.W.3d 1, 29-30 (Tenn. 2010). "An error in denying the

exercise of the right to self-representation is a structural constitutional error not amenable to harmless error review and requires automatic reversal when it occurs." *Hester*, 324 S.W.3d at 30.

### 3. Invocation of the Right to Self-Representation

The Defendant argues that because he "timely requested to represent himself at his first trial, this invocation should have been imputed to his second trial, and the trial court should have conducted a proper inquiry into the request before proceeding." The State responds, in part, that the Defendant never made a clear and unequivocal statement of a desire to waive the right to counsel and seek to represent himself. It also asserts that the Defendant waived or abandoned any request to represent himself by not renewing his request and proceeding through the second trial with counsel. We agree with the State.

"Both the United States and Tennessee Constitutions guarantee the right of an accused to self-representation or to representation by counsel." *State v. Small*, 988 S.W.2d 671, 673 (Tenn. 1999) (citing U.S. Const. amend. VI; Tenn. Const. art. I, § 9); *see Faretta v. California*, 422 U.S. 806 (1975); *State v. Northington*, 667 S.W.2d 57, 60 (Tenn. 1984). As another court has recognized, "despite their common constitutional foundation, the right to counsel and the right to self-representation serve distinct and often conflicting interests—the latter protecting a defendant's personal autonomy, the former guarding the integrity of our criminal justice system." *Wright v. State*, 168 N.E.3d 244, 252 (Ind. 2021).

Notably, these rights are held in the alternative, "with a defendant being able to assert one or the other but not both." *Small*, 988 S.W.2d at 673; *State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976) ("The choice is his; he represents himself or he is represented—one or the other, but not both."). Therefore, to exercise the right to self-representation, the defendant must first waive the right to counsel. *State v. Parsons*, 437 S.W.3d 457, 478 (Tenn. Crim. App. 2011). "When balancing the right of self-representation against the right to counsel at the trial stage of proceedings, the courts have assigned a constitutional primacy to the right to counsel over the right of self-representation." *Hester*, 324 S.W.3d at 30.

Thus, "[i]n cases where an accused represents himself, the question is whether the defendant knowingly and voluntarily waives the right to counsel." *State v. Armes*, 673 S.W.2d 174, 177 (Tenn. Crim. App. 1984). As such, three prerequisites must be satisfied before an accused may waive the right to counsel and assert the right of self-representation: "(1) the right must be asserted in a timely manner; (2) the request must be clear and unequivocal; and (3) the defendant must knowingly and intelligently waive the right to

counsel." *State v. Jones*, 568 S.W.3d 101, 125 (Tenn. 2019).  A knowing and intelligent waiver "occurs only after the trial judge advises a defendant of the dangers and disadvantages of self-representation and determines that the defendant knows what he is doing and his choice is made with eyes open."  *State v. Carruthers*, 35 S.W.3d 516, 546 (Tenn. 2000) (citation and internal quotation marks omitted).  Before accepting a waiver of the right to counsel, Rule 44 of the Tennessee Rules of Criminal Procedure requires the trial court to engage in a colloquy with the defendant to:

> (A)  advise the accused in open court of the right to the aid of counsel at every stage of the proceedings; and

> (B)  determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience, and conduct of the accused, and other appropriate matters.

Tenn. R. Crim. P. 44(a); *State v. McCary*, 119 S.W.3d 226, 257 (Tenn. Crim. App. 2003).

In this case, the procedure is unusual given that two trials were held, and the Defendant mentioned the issue of self-representation only before the first trial.  The Defendant presumes that a proper assertion of the right of self-representation made at the first trial should be "imputed" to the second trial, essentially as a "standing request."  However, for the reasons given below, we conclude that Defendant did not, at any time, make a clear and unequivocal assertion of his right to self-representation.[2]  As such, he is not entitled to relief on this ground.

### a.  Requirement of a Clear and Unequivocal Assertion

The Defendant argues that he clearly asserted his right to self-representation at the first trial.  In part, he argues that his request was clear because the trial court understood and denied it.  The State argues any assertions were equivocal as they were framed as questions about the option of self-representation and dissatisfaction with both defense counsel and the State's discovery responses.  We agree with the State.

---

[2]  Both parties also address the other factors in the analysis, including whether the Defendant's assertion of the right, assuming it to be such, was timely made.  *See Jones*, 568 S.W.3d at 125.  Because we conclude that the Defendant never made a clear and unequivocal assertion of the right to self-representation, we need not address the other factors.

Neither our supreme court nor this court has adopted an explicit holding as to what qualifies as an unequivocal assertion of the right to self-representation. However, our sister state courts and the federal courts have addressed this issue, and their holdings may be instructive. As an initial matter, one purpose behind requiring a clear and unequivocal assertion of an intention to waive the right to counsel is that it protects defendants from inadvertently waiving counsel based upon "occasional musings on the benefits of self-representation." *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000). The requirement, therefore, "prevents defendants from making casual and ineffective requests to proceed pro se, and then attempting to upset adverse verdicts after trials at which they had been represented by counsel." *Buhl v. Cooksey*, 233 F.3d 783, 792 (3d Cir. 2000) (citation and internal quotation marks omitted).

To that end, courts have recognized that "[t]o invoke the right to self-representation, a defendant need not recite some talismanic formula." *State v. Towle*, 35 A.3d 490, 493 (N.H. 2011). Instead, courts have generally recognized that the defendant's assertion should be one in which he or she makes "an explicit choice between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent himself." *State v. Curry*, 423 P.3d 179, 186 (Wash. 2018) (citation and internal quotation marks omitted). Phrased differently, the defendant's assertion of the right to self-representation should be such that "no reasonable person can say that the request was not made." *See Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir. 1986); *see also Wright*, 168 N.E.3d at 259 ("An 'unequivocal' assertion is one that's sufficiently clear in that, when granted, the defendant should not be able to turn about and urge that he was improperly denied counsel.") (citation and internal quotation marks omitted).

Our own cases have generally followed this structure, even if we have not recognized it expressly as such. Thus, in the most obvious instances, an assertion is unequivocal where the defendant declares, "I want to represent myself from this moment on. I want to represent myself." *State v. Hughes*, No. E2019-01185-CCA-R3-CD, 2021 WL 3818135, at *19 (Tenn. Crim. App. Aug. 27, 2021), *perm. app. denied* (Tenn. Jan. 13, 2022); *Akins v. State*, No. M2005-02215-CCA-R3-PC, 2007 WL 189461, at *5 (Tenn. Crim. App. Jan. 22, 2007) (finding unequivocal assertion, "I wish to represent myself," without indications of "any doubt or reservations about his decision"), *perm. app. denied* (Tenn. May 14, 2007); *see also United States v. Terrelonge*, 520 F. App'x 151, 153 (4th Cir. 2013) (finding unequivocal assertion of the right to self-representation when defendant stated that he "unequivocally wishe[d] to represent himself"). An unequivocal assertion may also occur when the defendant affirms that "he did not need a lawyer and that he wanted to represent himself." *State v. Alderson*, No. M2015-01395-CCA-R3-CD, 2016

WL 5543266, at *7 (Tenn. Crim. App. Sept. 29, 2016), *no perm. app. filed*; *State v. Richardson*, No. W2012-01866-CCA-R3-CD, 2014 WL 1274132, at *5 (Tenn. Crim. App. Mar. 28, 2014) (finding unequivocal assertion when, in response to the court's question about hiring an attorney, the defendant unequivocally asserted, 'I'm going to defend myself.'"), *no perm. app. filed*.

On the other hand, where a defendant's assertion does not reveal that he or she has made a choice to waive the right to counsel and seek self-representation, the assertion is more likely to be equivocal in nature. See *State v. Thigpen*, No. M2019-00047-CCA-R3-CD, 2020 WL 2216205, at *9 (Tenn. Crim. App. May 7, 2020) ("[T]he defendant wavered between wishing to represent himself and demanding appointed counsel. Because the defendant did not clearly and unequivocally assert his right to self-representation, we conclude the defendant did not waive his right to counsel."), *no perm. app. filed*. These equivocal assertions can arise where the defendant simply requests additional information about the nature of his or her rights or seeks confirmation that self-representation is an option. *Hughes*, 2021 WL 3818135, at *19 (finding equivocal assertion where the defendant asked the trial court if it was still an "option" for him to represent himself), *perm. app. denied* (Tenn. Jan. 13, 2022); *see also United States v. Light*, 406 F.3d 995, 999 (8th Cir. 2005) (finding equivocal assertion when the defendant "only asked the district court for information about 'the rule' on self-representation and manifested no intention to actually represent himself").

An equivocal assertion may also be present where the defendant's assertion focuses principally on dissatisfaction with counsel and seeks substitute counsel. *See State v. Daniels*, No. W2002-00193-CCA-R3-CD, 2003 WL 21339294, at *4 (Tenn. Crim. App. June 6, 2003) (finding equivocal assertion where "the defendant's emphasis was upon his dissatisfaction with his appointed counsel and his desire to have a different attorney appointed or retained in his case."), *perm. app. denied* (Tenn. Oct. 27, 2003); *State v. Sexton*, No. E2022-00884-CCA-R3-CD, 2024 WL 390336, at *15 (Tenn. Crim. App. Feb. 2, 2024) (finding equivocal assertion where the defendant said that he was "not asking to go pro se" but instead wanted "substitute counsel"), *perm. app. denied* (Tenn. July 2, 2024). Admittedly, an assertion made in this context can present special challenges, if only because defendants "are free to seek to invoke a right of self-representation as an alternative should their request for the appointment of a different attorney be denied." *Hester*, 324 S.W.3d at 33; *Adams v. Carroll*, 875 F.2d 1441, 1445 (9th Cir. 1989) ("Throughout the period before trial, Adams repeatedly indicated his desire to represent himself if the only alternative was the appointment of Carroll. While his requests no doubt were *conditional*, they were not equivocal." (emphasis in original)).

13

The line may be a fine one.  But it has been articulated as being the difference between expressing a genuine choice to undertake the full representation versus attempting to manipulate the judicial process to secure a new attorney or delay the trial.  *See Hester*, 324 S.W.3d at 31; *State v. Reed*, No. E2019-00771-CCA-R3-CD, 2020 WL 5588677, at *12 (Tenn. Crim. App. Sept. 18, 2020), *perm. app. denied* (Tenn. Feb. 5, 2021).  With these standards in mind, we turn to the statements made by the Defendant during the first trial.

**b.      Absence of Clear and Unequivocal Assertion**

The Defendant cites two interactions with the trial court as evidence of his alleged assertions of the right to self-representation.  However, whether considered individually or collectively, these statements do not constitute an unequivocal assertion that the Defendant wished to waive his right to counsel and represent himself instead.

As evidence of a clear and unequivocal assertion, the Defendant first points to his statement, "Well, what if I decided to represent myself now?"  We respectfully disagree that this statement represents an unequivocal assertion of the right to self-representation.  Instead, after being denied his first choice of hiring another attorney, the Defendant posed a hypothetical question, sought further information about his rights, and probed for options to address the absence of pretrial discovery.  *See Hughes*, 2021 WL 3818135, at *19 ("Regarding the first request, the Appellant asked the trial court if it was still an 'option' for him to represent himself, but the Appellant did not clearly and unequivocally state that he wanted to do so."); *Frazier-El*, 204 F.3d at 558 (concluding that a defendant's "musing[] on the benefits of self-representation" is not an unequivocal assertion of the right).  Because this statement asked questions about—but did not assert—undertaking the representation himself, it was not an unequivocal assertion of the right to self-representation.

The same is true with respect to the Defendant's second identified statement, "As long as I've got a legal aid counsel present, and as long as I'm willing to – I – you know – state the facts of my rights – and being able to[,] how can I go about that, Your Honor?"  This second statement again sought information from the court about how to exercise the right to self-representation.  Moreover, far from reflecting a decision to proceed without a lawyer, this statement shows that the Defendant still wished to have the assistance of counsel, albeit in a hybrid representation.  Other courts have recognized that similar statements do not constitute unequivocal assertions of the right to self-representation.  *See United States v. Mendez-Sanchez*, 563 F.3d 935, 947 (9th Cir. 2009) ("[W]e have held that a defendant who wishes to represent himself or herself and also asks that he or she be afforded standby counsel has not unequivocally asserted his or her right to self-representation and waived his or her right to counsel."); *cf. State v. Smith*, No. 01C01-9205-

14

CC-00152, 1995 WL 84021, at *25 (Tenn. Crim. App. Mar. 2, 1995) (finding assertion equivocal when defendant sought to proceed pro se while participating in his defense with other appointed lawyers), *perm. app. denied* (Tenn. Sept 5, 1995). Again, because this statement asked questions about—but did not assert—undertaking the representation himself, it was not an unequivocal assertion of the right to self-representation.

Taken as a collective whole and in the context in which the Defendant offered his statements, it is clear that he was exploring the possibility of representing himself and musing about "what would happen if" he were permitted to do so. It is also true that he never once made an unequivocal assertion that he genuinely wished to forgo counsel and conduct his own defense. He made no such assertion before his first trial and did not do so before his second. Without this unequivocal assertion by the Defendant, we conclude the trial court did not deny the Defendant the right of self-representation at the second trial. The Defendant is not entitled to relief on this issue.

Pushing against this conclusion, the Defendant argues that the trial court "immediately understood" that he asserted his right to self-representation because it stated, "I'm not going to let you represent yourself at this point[.]" We respectfully disagree. The Defendant's statements may have been sufficiently *clear* for the trial court to understand that the Defendant was considering self-representation to resolve a perceived discovery issue. But the requirement of an *unequivocal* assertion looks to more than just the clarity of a request—it examines whether a defendant has expressed a genuine desire to forgo counsel and undertake the representation that is not wavering or uncertain. *See, e.g.*, *Daniels*, 2003 WL 21339294, at *2 (holding that assertion of the right to self-representation was equivocal due to frustrations with appointed counsel, even though the trial court understood that the defendant had requested to represent himself and conducted a partial Rule 44 hearing). The trial court's recognition here that the Defendant was asking about self-representation does not transform exploratory questions into a constitutionally enforceable assertion. *United States v. Burton*, 698 F. App'x 959, 962 (10th Cir. 2017). Particularly given the reversal dilemma, we decline to hold that the right to self-representation may be invoked simply because the trial court understands a defendant to be contemplating various options. *See State v. Allen*, No. E2022-00437-CCA-R3-CD, 2023 WL 4487704, at *25 (Tenn. Crim. App. July 12, 2023) (declining to create "incentives for defendants to use a request for self-representation as a subterfuge when they lack a genuine desire or intent to represent themselves"), *perm. app. denied* (Tenn. Feb. 12, 2024).

In summary, we conclude that the Defendant's statements raising the possibility of self-representation at the first trial did not constitute an unequivocal assertion that he wished to forgo counsel and conduct his own defense in the second trial. Without a clear

15

and unequivocal assertion of the right to self-representation by the Defendant, we respectfully conclude that the Defendant was not denied this right. He is not entitled to relief on these grounds.

## C.  SENTENCING

Finally, the Defendant challenges his consecutive sentences. He concedes that the trial court had the authority to order consecutive sentences and that "it explained why it found that [the Defendant] was a professional criminal and had committed the underlying offenses while on probation." However, he argues that the aggregate length of his sentence, thirty-four years,[3] does not reasonably relate to the severity of the offenses and is not the least severe measure necessary to achieve the purposes of sentencing.

In response, the State argues that the trial court's decision to impose consecutive sentences should be affirmed. It asserts that the Defendant was eligible for consecutive sentences. It also maintains that the trial court's decision is presumed to be reasonable because its findings reflect that it considered the purposes and principles of sentencing. We agree with the State.

### 1.  Standard of Appellate Review

When a defendant challenges the trial court's decision to impose consecutive sentences, we review that decision for an abuse of discretion accompanied by a presumption of reasonableness. *See State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). The presumption of reasonableness is conditioned on the trial court providing "reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *Id.* at 861. As such, "[s]o long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* at 862.

---

[3]    The State takes significant issue with the Defendant's characterization that the trial court imposed a thirty-four-year sentence. It is true that the trial court imposed an effective sentence of twenty-six years, not thirty-four, in the cases at bar. But, we also understand that the Defendant includes in the total his previous eight-year sentence to which the new sentences are aligned consecutively. At the time of this sentencing hearing, the Defendant was already serving this eight-year sentence and, according to the presentence investigation report, had about two years and eight months remaining before it expired. Whether the sentence imposed was twenty-six years or effectively twenty-eight years and eight months, this discrepancy between the parties, such as it is, does not affect the presumption of reasonableness.

## 2. Consecutive Sentencing

The process of imposing discretionary consecutive sentences pursuant to Tennessee Code Annotated section 40-35-115(b) involves two steps. First, the trial court must find by a preponderance of the evidence that "the defendant qualifies for consecutive sentencing under one of the classifications" set forth in the statute. *State v. Perry*, 656 S.W.3d 116, 127 (Tenn. 2022) (footnote omitted). Second, the trial court must "then choose whether, and to what degree, to impose consecutive sentencing based on the facts and circumstances of the case, bearing in mind the purposes and principles of sentencing." *Id.*

In this case, the trial court began its sentencing announcement by explaining the purposes and principles of sentencing upon which it relied. The court also outlined the enhancement and mitigating factors it considered. It also carefully identified why a sentence of incarceration was appropriate to avoid unduly depreciating the seriousness of the Defendant's various crimes and how this consideration outweighed other factors in favor of an alternative sentence. The trial court further considered the Defendant's potential for rehabilitation or treatment.

The court observed that the Defendant had at least "eight prior felonies, 21 prior misdemeanors, eight violations of community supervision, four violations of the Sex Offender Registry Act, [and] two probation violations." Additionally, the Defendant was serving an eight-year sentence on either probation or community corrections for a conviction for the sale of .5 grams or more of methamphetamine at the time he committed the instant offenses.

The trial court also found that the Defendant was eligible for consecutive sentences under three grounds: that he was a professional criminal who had knowingly devoted his life to criminal acts as a major source of livelihood; that he was an offender whose record of criminal activity is extensive; and that he was being sentenced for an offense committed while on probation. *See* Tenn. Code Ann. § 40-35-115(b)(1), (2), (6). Discussing the number of the Defendant's felony convictions in particular, the court observed that it was "difficult to see anything in his future" other than "some extensive time of incarceration."

In support of his argument that consecutive sentences are not the least severe measure necessary to accomplish the goals of sentencing, the Defendant firmly asserts that his case is "no different" than the defendant's case in *State v. Biggs*, 482 S.W.3d 923 (Tenn. Crim. App. 2015). In *Biggs*, a divided panel of this court reversed a trial court order imposing partially consecutive sentences. Although the court agreed that the defendant was eligible for consecutive sentences, the majority found that the aggregate length, forty-

17

four years at 85% release eligibility, was neither justly deserved nor the least severe measure necessary to achieve the purpose of the sentence. *Id.* at 927-28. The majority relied heavily on the circumstances of the offense, including that the robberies were committed with a toy gun, no one was injured, and two of the victims knew the gun was plastic. It also considered the Defendant's age of forty-nine and complete lack of previous violent offenses. *Id.* at 927.

However, then-Presiding Judge Woodall observed in dissent that the majority differed from the trial court in its application of the facts, contrary to the trial court's broad discretion and the standard of appellate review. *See id.* at 928-29. Whatever the merits of the respective positions in *Biggs*, it is clear that the presiding judge's view on the deferential standard of review has prevailed over time. In the decade since *Biggs*, this court has not relied upon that decision to reverse a consecutive sentencing order. Most typically, we have distinguished *Biggs* by recognizing that all sentencing decisions are individualized. *See, e.g.*, *State v. Hatchett*, No. W2020-00335-CCA-R3-CD, 2021 WL 1148899, at *5 (Tenn. Crim. App. Mar. 24, 2021), *no perm. app. filed.* Even recently, we have distinguished the case on its facts, noting that "[w]e are mindful of the discretion afforded to a trial court that imposes a sentence that is consistent with the principles of sentencing." *State v. Nelson*, No. M2023-00176-CCA-R3-CD, 2024 WL 1192985, at *17 (Tenn. Crim. App. Mar. 20, 2024), *no perm. app. filed*; *see also State v. Mahaffey*, No. W2022-01778-CCA-R3-CD, 2024 WL 418130, at *9 (Tenn. Crim. App. Feb. 5, 2024) (expressly declining to "to apply [*Biggs*'s] reasoning" where differences existed in the underlying facts and defendants), *perm. app. denied* (Tenn. June 21, 2024).

As a practical matter, we must recognize that *Biggs* has been confined to its narrow facts. It certainly does not apply here to show that the trial court abused its sentencing discretion. Instead, the trial court properly considered the factors for imposing consecutive sentencing contained in Tennessee Code Annotated section 40-35-115. It acknowledged that it had considered the purposes and principles of sentencing, and it imposed consecutive sentences recognizing the Defendant's extensive criminal record and his history of probation violations. The need to protect the public from future criminal activity by the Defendant is plainly evident in the trial court's decision.

Beyond this, "our supreme court has never required a sentencing court to explicitly confirm on the record that it has considered each individual purpose and principle of sentencing." *State v. Henderson*, No. W2022-00882-CCA-R3-CD, 2023 WL 4105937, at *6 (Tenn. Crim. App. June 21, 2023), *no perm. app. filed*. Indeed, with respect to the parsimony principle in Tennessee Code Annotated section 40-35-103(4) specifically, we have instead inferred that the trial court has complied with this sentencing principle when

18

the trial court acknowledged that it considered the purposes and principles of sentencing; the court discussed the specific purposes sought to be advanced by the overall sentence, such as the need to protect the public from a defendant's future criminal conduct; and the court concluded that consecutive sentences are necessary or appropriate to accomplish the identified purposes of sentencing.

*Id.*  Because the trial court properly articulated its reasons for ordering consecutive sentences consistent with the purposes and principles of sentencing, its sentencing decisions are presumed to be reasonable and within its broad discretion.  To the extent that any claimed deficiency in the sentencing announcement exists—and we find no such deficiency—it does not remove the presumption of reasonableness from the trial court's sentencing decision.  The Defendant is not entitled to relief on this ground.

## CONCLUSION

In summary, we hold that the evidence is legally sufficient to sustain the Defendant's convictions.  We also hold that the Defendant was not denied the right to represent himself and that the trial court properly imposed consecutive sentences.  Accordingly, we respectfully affirm the judgments of the trial court.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE

19